COLUMBIA BANK, Respondent, *v.* HARRY TENNENBAUM, Appellant.

First Department, April 6, 1923.

**Principal and agent — power of attorney — action on promissory note signed by attorney in fact — power of attorney given by defendant gave authority to act in transacting business for defendant with defendant's bank — note sued on was not given to bank — error to reject proof of transaction in which note was given — question of fact as to extent of attorney's authority.**

In an action on a promissory note signed by defendant's attorney in fact, it is error to reject proof of the transaction in which the note was given, where it appears that the power of attorney given by the defendant authorized the attorney to act for the defendant in transacting any business directly or indirectly with the bank with which he was doing business; that the note, which was payable at that bank, was given to a corporation with which the defendant had transacted business to the extent merely of selling merchandise to it; that the note was given during defendant's absence from the United States, and that during all of that time his attorney in fact did not, in the conduct of the business, give to any one any notes or trade acceptances in payment of current obligations.

It was error for the court to direct a verdict in favor of the plaintiff, since the evidence introduced presented a question of fact as to the extent of the authority of the attorney.

APPEAL by the defendant, Harry Tennenbaum, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 18th day of

April, 1922, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 26th day of April, 1922, denying defendant's motion for a new trial made upon the minutes.

*Leopold Blumberg* of counsel, for the appellant.

*Ernst, Fox & Cane* [*Melville H. Cane* of counsel], for the respondent.

DOWLING, J.:

The complaint herein sets out two causes of action, each based on a promissory note for $1,250, the first payable October 3, 1921, and the second payable October 10, 1921. The notes are identical except as to the due date. The first note is as follows:

" $1,250                    NEW YORK, *June* 30*th*, 1921.

" On October 3rd, 1921, after date I promise to pay to the order of The United Knitwear Mills, Inc., Twelve Hundred and fifty 00/100 Dollars, Payable at State Bank, Williamsburg Branch, 60 Graham Avenue, Brooklyn, N. Y. Value Received.

" No.—— Due October 3rd 1921.

" H. TENNENBAUM

" by MAX H. BROWN, *Atty."*

Indorsed —" THE UNITED KNITWEAR MILLS, INC.,

" By H. BOEPPEL, *Pres."*

These notes, after indorsement by the payee, were discounted by plaintiff, and when they were presented for payment, payment was refused, the same having been stopped by defendant on October third and eighth.

The defendant has been engaged in the knit goods manufacturing business for a number of years, trading under the name of Empire Knitting Works. Max H. Brown was employed by him as book-keeper and accountant. In June, 1921, the defendant sailed for Europe and left his business in charge of Brown during his absence, which was for a period between about June 25 and October 13, 1921. Prior to his departure the defendant executed to the said Brown a power of attorney, as follows:

" *Know all men by these presents*, that Harry Tennenbaum, proprietor of the Empire Knitting Works, residing at 10 Varet Street, of the City of New York, County of Kings, and State of New York, have made, constituted and appointed and by these presents do make, constitute and appoint Max H. Brown of said City my true and lawful Attorney, for me and in my name, place and stead, in transacting any business, directly or indirectly, with The State Bank, Williamsburg Branch, its officers or agents, to

sign, endorse, draw, accept, make, execute and deliver all such notes, checks, bills of exchange and other contracts or instruments in writing, with or without seal, and such verbal contracts as he may deem proper, to sign my name as written on the margin hereof, giving and granting unto my said Attorney full power and authority to do and perform all and every act and thing whatsoever, requisite and necessary to be done in and about the premises, as fully, to all intents and purposes, as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said Attorney or his substitute shall lawfully do or cause to be done by virtue hereof, and any such notes, checks, bills of exchange, contracts or instruments, signed, indorsed, drawn, accepted, made, executed or delivered by my said Attorney, and which shall be hereafter received by or come to said Bank, or its officers or agents, shall bind and are hereby ratified and confirmed by the undersigned.

" In witness whereof, I have hereunto set my hand and seal the 23rd day of June, in the year one thousand nine hundred and twenty-one.
　　　　　　　　　　　" HARRY TENNENBAUM [L. S.]

" Sealed and delivered in presence
　　　　　　　　" HENRY HARKEN.

" Duly acknowledged June 23, 1921, before
　　　　　　　　　　　" HENRY HARKEN, *Notary Public.*
" H. TENNENBAUM,
　　　　" M. H. BROWN, *Atty."*

During the absence of the defendant, Max Brown, while in charge of the business, paid bills which became due in the usual course, purchased merchandise which was necessary for the conduct of the business, paid the help and for that purpose he drew, as attorney, some sixty-three checks on the State Bank, of which seventeen were drawn to the order of " Cash." He also had charge of the sale of the defendant's products. He did not during that period of time purchase any machinery, but only such merchandise as was necessary for the business. At no time during the conduct of the defendant's business did he give to any one any notes or trade acceptances in payment of any current obligations for merchandise bought, and he always paid his obligations by checks in the usual manner. No trade acceptances were made or drawn by Brown in the absence of the defendant, and Brown paid all of the current obligations by checks. At no time did the defendant have any direct dealings with the United Knitwear Company, the payee in the notes, except that he sold to the United Knitwear Company merchandise through a selling agent.

Defendant was not allowed to prove what the actual transaction was between Brown and the United Knitwear Company which led to the giving of the notes in suit.

When the notes were presented for discount, the vice-president of the plaintiff bank testified that he did not get in touch with Brown, nor make any inquiry to ascertain from him the nature of the transaction in the course of which the notes were given. He spoke to no one at the Empire Knitting Works as to the notes, nor did he ever see the original of the power of attorney; he saw a copy thereof only after this suit was brought.

The credit man of the plaintiff bank testified that at the request of its vice-president he talked over the telephone with the manager of the State Bank, Williamsburg Branch, who told him he had the power of attorney on file at the bank, that defendant was worth over $40,000, and that the signature agreed with the authority on file. He admitted that he had not read the power of attorney when the notes were discounted, and that he had made no inquiry of the knitting works as to Brown's authority to sign them.

When the defendant sought, by his own testimony and that of Brown, to show the purpose for which the notes were given, every effort so to do was objected to by plaintiff's counsel, and the objections being sustained, exceptions were duly taken. First he sought to do this by reading from 'defendant's examination before trial certain questions not read by plaintiff's counsel. Beginning at the top of page 48 of the record, and running over onto page 50, are questions seeking to show the real transaction for which the notes were given. From the form of the interrogatories it is apparent that defendant was endeavoring to establish that the notes were given in payment for a purchase of stock by Brown for defendant in the United Knitwear Company, in order to obtain its business, which stock was never delivered to defendant; nor was defendant allowed to show that Brown had never signed any other notes or commercial paper in defendant's name, although the question excluded had been asked by plaintiff's counsel upon the examination before trial. Nor was either Brown or defendant allowed to give any testimony as to the consideration for the notes or the circumstances under which they were given.

Although the learned trial court had said during the course of the trial that he thought there was evidence enough to go to the jury on the question of authority, he took the view towards the close of the case that the power of attorney was itself sufficient authority to execute the notes, and, therefore, he ultimately directed a verdict for plaintiff.

Had the plaintiff done its duty and inspected the power of

attorney, or a copy thereof, before it discounted the notes in suit, it would have ascertained that it conferred upon Brown power to represent defendant only " in transacting any business, directly or indirectly with the State Bank, Williamsburg Branch," to make notes or other instruments in writing. The making and delivery of these notes was not a transaction of business with the State Bank; it was a transaction with the United Knitwear Company. The mere making of a note payable at the bank did not necessarily constitute the transaction of business therewith. The question involved was not whether Brown had made the note payable thereat, but whether the giving of the note to the payee was within the scope of his authority. If the mere making of the note payable at the bank by Brown irrevocably bound defendant, Brown could have speculated in stocks, or bought real estate, or purchased mills, and by merely designating the State Bank as the place of payment, left defendant helpless. Undoubtedly, checks drawn on the State Bank, or notes or bills to its order in exchange for cash received, would have been within the scope of the power of attorney. But when a note was made to a third party, all who dealt with it were bound to inquire into the authority of the attorney who signed it.

The learned trial court properly said: " This note is not a transaction with the State Bank. * * * It is a transaction between the Knitwear Mills and the maker of the note, and it is incidentally payable by the State Bank."

The plaintiff ascertained that Brown had power of attorney to act for defendant, but it never sought to ascertain the extent of its authority. Had it inquired, it would have ascertained that the instrument was a complete protection only for the State Bank. It would then have inquired into the consideration which Brown received for the making of the note. If that consideration was one which was proper to be received under Brown's exercise of authority from his principal, the note was valid. If the consideration was something with which Brown had no power to deal in his principal's absence, the note did not bind the latter.

Plaintiff now claims that defendant is bound on the theory of Brown's general agency to act for him. That is not the theory on which the verdict was directed, which was that the transaction came expressly within the terms of the power of attorney. But if the contention now made were correct, it would afford all the more reason for admitting defendant's proffered proof that the transaction was not one within the scope of Brown's authority.

Even upon the proof which is now in the record, a question of fact was presented as to the extent of Brown's authority, in

addition to which a reversal is required because of error in excluding the testimony of Brown and defendant as to the actual transaction involving the giving of the notes in suit and the condition of defendant's affairs when they were given.

The judgment and order appealed from should be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., PAGE, MERRELL and FINCH, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event.